**Date Signed:**
**February 9, 2017**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>YOUNG HUI KIM,<br><br>      Debtor. | Case No. 14-01353<br>Chapter 7 |
| JULIA RIIHIMAKI,<br><br>      Plaintiff,<br><br>  vs.<br><br>YOUNG HUI KIM, et al.,<br><br>      Defendants. | Adv. Pro. No. 15-90001<br><br>Related Dkt. No. 83 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The evidentiary hearing on plaintiff Julia Riihimaki's Motion to Enforce Settlement[1] was held on September 6 and 7, October 27, and December 5, 7, and 14,

---

[1] Dkt. 83.

2016. Ronald Ogomori and Ronald Sakimura represented Mrs. Riihimaki, and Christopher Muzzi represented defendants Young Hui Kim ("Reverend Kim"), Glory of God Presbyterian Church ("Church"), and Pacific Eagle Realty, LLC ("Realty").

I have considered all of the testimony and other materials that were received in evidence, much of which is in sharp conflict, and have evaluated the credibility and weight of each piece of evidence. I make the following

## FINDINGS OF FACT

In February 2011, Mrs. Riihimaki commenced a civil action in Hawaii state court against Reverend Kim, Realty, and Church to recover money that Reverend Kim allegedly swindled from Mrs. Riihimaki through a number of real estate transactions and monetary advances. Reverend Kim filed a counterclaim. The parties entered into a settlement agreement and Mrs. Riihimaki dismissed the lawsuit.

In June 2011, Reverend Kim filed a complaint in state court against Mrs. Riihimaki. Her complaint was substantially identical to her counterclaim in the first state court action. Mrs. Riihimaki filed a counterclaim in response. Ms. Riihimaki also filed a complaint against Reverend Kim and Realty in the Regulated Industries Complaints Office ("RICO").

On October 8, 2014, Reverend Kim filed a chapter 7 bankruptcy case. This stayed the second state court action.

Mrs. Riihimaki filed a timely complaint in the bankruptcy court commencing

2

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed  02/09/17   Page 2 of 16

this adversary proceeding. Her complaint was based on essentially the same conduct that she alleged in the first state court action. She alleged that her claims against Reverend Kim were not dischargeable because Reverend Kim cheated her out of money and property by false pretenses, false representation, and fraud, while acting as her real estate agent.[2] Reverend Kim filed a counterclaim against Mrs. Riihimaki that was similar to her counterclaim in the first state court action and her complaint in the second state court action.

Reverend Kim was originally represented in her bankruptcy case by Greg Dunn, and by Jean Christensen in this adversary proceeding.

Reverend Kim wanted to reach a settlement with Mrs. Riihimaki for several reasons. First, she lacked sufficient funds to pay defense counsel. Second, Mrs. Riihimaki sued her boyfriend, son, sister, brother-in-law, and two business associates and she did not want the litigation to affect those people any longer. Third, the long-running dispute with Mrs. Riihimaki prevented Reverend Kim from focusing on her ministry; she testified that she felt that her life was "stuck." Lastly, if Mrs. Riihimaki proved that Reverend Kim committed fraud, Reverend Kim's real estate license and ability to make money would be in jeopardy.

After months of discussion, Reverend Kim orally authorized Ms. Christensen to

---

[2] The Complaint (Dkt. 2) asserts claims under section 523(a)(2), (a)(4), and (a)(6).

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed 02/09/17   Page 3 of 16

send a written settlement offer to Mrs. Riihimaki's counsel.[3] Reverend Kim understood and approved all of the terms of the offer. Ms. Christensen did not, however, obtain Reverend Kim's written authority to make the offer.

In summary, Reverend Kim's offer provided that:

- Reverend Kim would stipulate to a nondischargeable judgment against her (but not any of the other defendants) in the amount of $650,000.[4]

- Any proceeds that Mrs. Riihimaki received from the bankruptcy proceeding, or from the so-called "Haleiwa Property" or the "Wailele Property," would be applied dollar for dollar against the judgment.[5]

- If Mrs. Riihimaki's interest in the Haleiwa Property "is or becomes saleable," and Mrs. Riihimaki did not sell the property within eighteen months after specified dates, the then-current fair market value of the property would be credited against the judgment.[6]

- The pending (second) state court action, the adversary proceeding, and the RICO complaint would be dismissed with prejudice.[7]

---

[3] Dkt. 83-1 at 19-21.

[4] *Id.* at 19.

[5] *Id.* at 19-20.

[6] *Id.* at 20.

[7] *Id.* at 20-21.

4

U.S. Bankruptcy Court - Hawaii    #15-90001    Dkt # 245    Filed 02/09/17    Page 4 of 16

- The settlement agreement would not be construed as an admission by Reverend Kim, Church, or Realty of liability in the adversary proceeding.[8]

- The settlement agreement would be subject to "review by" Reverend Kim's bankruptcy trustee and the approval of the bankruptcy court.[9]

Mrs. Riihimaki purported to "accept" the offer but with numerous changes and additional provisions. Thus, the response was a counteroffer.[10]

In summary, the most important terms of the counteroffer provided that:

- Reverend Kim would stipulate to a judgment against her in the amount of $1,350,000, $650,000 of which would be nondischargeable "under Section 523 of the Bankruptcy Code." The counteroffer outlined the calculation of the judgment amount and specified a payment schedule for the nondischargeable part of the judgment.[11] Further, Reverend Kim could not conduct business or hold property through any entity other than Church or Realty until the judgment was paid.[12]

- Mrs. Riihimaki would file a proof of claim in Reverend Kim's bankruptcy case.

---

[8] *Id.* at 21.

[9] *Id.* at 21.

[10] *Id.* at 28-35.

[11] *Id.* at 29.

[12] *Id.* at 28.

Any recovery on that claim in excess of $7,500 would be applied to the nondischargeable portion of the judgment.[13]

- Any proceeds received by Mrs. Riihimaki from the Haleiwa Property or the Wailele Property, net of certain expenses outlined in the counteroffer, would be applied to the nondischargeable portion of the judgment.[14]

- The counteroffer's provision regarding the sale of the Haleiwa property within eighteen months was the same as the comparable provision of the offer, except the fair market value of the property was fixed at $750,000.[15]

- The defendants would make two cash payments of $30,000 and $28,450.43 that would not be credited to the judgment.[16]

- The pending (second) state court case, the adversary proceeding, and the RICO complaint would be dismissed, and claims would be released, subject to specified conditions precedent.[17]

- Finally, the counteroffer required the Settling Defendants to represent and warrant that they did not have any assets, other than the Haleiwa property and

---

[13] *Id.* at 30.

[14] *Id.* at 31.

[15] *Id.* at 32.

[16] *Id.* at 33, 34.

[17] *Id.* at 33-34.

6

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed 02/09/17   Page 6 of 16

those disclosed in Reverend Kim's bankruptcy schedules.[18]

Ms. Christensen, Mr. and Mrs. Dunn, and Reverend Kim met several times to discuss the counteroffer. The circumstances of those meetings were far from ideal (most of the meetings were held in bars and restaurants over drinks). Further, the dispute with Mrs. Riihimaki made Reverend Kim very angry; she believed that Mrs. Riihimaki had defrauded her, rather than the other way around, and resented the fact that she might have to compromise with Mrs. Riihimaki. Nevertheless, by the last such meeting, Reverend Kim was fully informed of, understood, and agreed to the terms of the counteroffer. Reverend Kim orally authorized Ms. Christensen to accept the counteroffer, and Ms. Christensen did so.[19] Because Reverend Kim understood the terms of the counteroffer, there was a meeting of the minds about the essential terms of the settlement. Ms. Christensen did not obtain Reverend Kim's written authorization, in any form, before sending the acceptance.

Ms. Riihimaki's counsel prepared a draft settlement agreement. (Nothing in the counteroffer or the acceptance provides that the parties' agreement was contingent upon the execution of a formal settlement agreement.) The draft settlement agreement included provisions that were inconsistent with and materially different from the

---

[18] *Id.* at 35.

[19] *Id.* at 36-37.

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed 02/09/17   Page 7 of 16

terms of the accepted counteroffer. These include (but are not limited to) the following:

- While the counteroffer referred to the entry of a nondischargeable judgment under section 523, the draft settlement agreement provided for the entry of judgment under section 523(a)(2), and required her to admit that the judgment was based on "false pretenses, a false representation or actual fraud."[20] This was important (and unacceptable) to Reverend Kim because she wished to retain her real estate license in order to earn a living, and admitting to fraudulent conduct could jeopardize her license.

- Under the draft settlement agreement, the releases in favor of Mrs. Riihimaki would have become effective long before the releases in favor of Reverend Kim and her co-defendants.[21] This was inconsistent with the counteroffer and disadvantageous to Reverend Kim.

- Under the counteroffer, Mrs. Riihimaki's obligation to withdraw her RICO complaint was contingent only on entry of the stipulated judgment.[22] The draft settlement agreement imposed many more conditions on that obligation.[23]

---

[20] *Id.* at 64.

[21] *See, e.g., id.* at 66, 67, 73-74.

[22] *Id.* at 34.

[23] *Id.* at 67-68.

8

- The draft settlement agreement obligated Reverend Kim to provide extensive information to Mrs. Riihimaki and to limit her business activities to Church and Realty until the entire stipulated judgment (not just the nondischargeable portion) was satisfied.[24] The counteroffer contained no comparable provision.
- The counteroffer provided that Reverend Kim "shall" obtain the trustee's review and the court's approval of the agreement.[25] The draft settlement agreement includes a provision about court approval which is largely consistent with the counteroffer with one significant exception. Under the draft settlement agreement, Reverend Kim was obligated to obtain a bankruptcy court order that "authorize[d] Reverend Kim to act for and on behalf of the Trustee, to the limited extent necessary, to dismiss [the counterclaim in the adversary proceeding and the complaint in the second state court case] and to release the claims released by Reverend Kim in this Agreement . . . ."[26] This provision did not appear in the counteroffer. It is important because Reverend Kim's claims against Mrs. Riihimaki are property of her bankruptcy estate and under the trustee's exclusive control; without such an order, Reverend Kim could not deliver all of the consideration she offered to Mrs. Riihimaki. It is problematic

---

[24] *Id.* at 68-69.

[25] *Id.* at 35.

[26] *Id.* at 75.

9

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed 02/09/17   Page 9 of 16

because there was no assurance that the trustee would agree to such an order or that the court would enter such an order without the trustee's agreement.

Ms. Christensen presented Reverend Kim with the draft settlement agreement.[27] Despite the numerous glaring inconsistencies between the accepted counteroffer and the draft settlement agreement, Ms. Christensen told Reverend Kim that it was a "take it or leave it" proposition. Upon reviewing the draft, Reverend Kim, for the first time, instructed Ms. Christensen to discontinue seeking a settlement. She said that she felt defrauded by Mrs. Riihimaki, rather than vice versa, and she now wanted to prove it.

Reverend Kim never agreed to the terms in the draft settlement agreement that varied from the counteroffer.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

I. Jurisdiction

The bankruptcy court has personal jurisdiction over the parties and jurisdiction of subject matter.[28] Venue is proper in this district.[29] In this adversary proceeding, all

---

[27] Dkt. # 83-1 at 62-76.

[28] *See* 28 U.S.C. §§ 157, 1334.

[29] *See id.* §§ 1408-1409.

10

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed 02/09/17   Page 10 of 16

parties consented to entry of final orders and judgments by this court.[30]

The bankruptcy court can summarily enforce a settlement agreement.[31] But where there are material factual disputes about the formation of the settlement agreement, the court must hold an evidentiary hearing to resolve those disputes.[32]

## II. Enforceability of the Accepted Counteroffer

Federal courts apply state contract law principles to the construction and enforcement of settlement agreements, even if the underlying claims are federal, unless federal law displaces state law.[33]

Under Hawaii law, a settlement agreement, like any other contract, requires an offer, acceptance, consideration, and parties who have the capacity and authority to enter into the agreement.[34] There must also be mutual assent or a meeting of the minds as to all the essential elements of the contract.[35]

---

[30] Dkt. 2 at 6; Dkt. 14 at 13.

[31] *City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 958 (9th Cir. 1994).

[32] *Id.*

[33] *See O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (where the applicable federal statute required a signed settlement agreement and the claimant died before signing the agreement, the settlement was unenforceable even though state law would have enforced it); *United Commercial Ins. Servs., Inc. v. Paymaster Corp*, 962 F.2d 853, 856 (9th Cir. 1992) (applying principles of California law to interpret a settlement of claims under federal and state law).

[34] *Amantiad v. Odum*, 90 Haw. 152, 162 (1999).

[35] *Siopes v. Kaiser Foundation Health Plan, Inc.*, 130 Haw. 437, 447 (2013).

11

There is no dispute that Mrs. Riihimaki and Reverend Kim had the legal capacity to enter into a contract, that Mrs. Riihimaki made a counteroffer, that Reverend Kim's counsel accepted it, and that the parties' mutual promises amount to consideration. Although Reverend Kim testified in the evidentiary hearing that she did not authorize her attorney to accept the counteroffer and that she did not know that there was a counteroffer until much later, I have found that Ms. Christensen acted with Reverend Kim's knowledge, consent, and oral approval and that there was a meeting of the minds.

Under Hawaii law, an attorney must have a client's written authority to settle a case.[36] The parties disagree about whether federal common law or state law governs an attorney's authority to bind her client to a settlement. The Ninth Circuit has not ruled on this issue and there is a split amongst circuits.[37] In Hawaii, the U. S. District Court has held that federal common law applies to cases in which the original complaint was

---

[36] Haw. Rev. Stat. § 605-7; *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1137 (9th Cir. 2002).

[37] *Compare Michaud v. Michaud*, 932 F.2d 77, 79 (1st Cir. 1991) (federal law applies when claim is based on federal law); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d Cir. 1989) (where an action is based upon federal law, the authority of an attorney to settle that action is a federal question); *Garabedian v. Allstates Eng'g Co.*, 811 F.2d 802, 803 (3rd Cir. 1987) (applying federal common law); *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (questions regarding the enforceability or validity of [settlements] are determined by federal law); *Larson v. Heritage Square Assoc.*, 952 F.2d 1533, 1537 (8th Cir. 1992) (applying federal common law), *with Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) (applying Indiana law); *U.S. v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000) (applying New Mexico law); *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) (applying Georgia law); *Makins v. D.C.*, 277 F.3d 544, 547–48 (D.C. Cir. 2002) (relying on the Restatement (Second) of Agency to determine whether an agent has the authority to enter into a binding agreement on behalf of the principal).

12

U.S. Bankruptcy Court - Hawaii    #15-90001    Dkt # 245    Filed 02/09/17    Page 12 of 16

filed in federal court under federal question jurisdiction, and that, under federal common law, a client can orally authorize an attorney to make a settlement agreement.[38]

This leads to the question whether a case involving nondischargeability under section 523 is analogous to a federal law claim presented under the district court's federal question jurisdiction. The analogy is not perfect. Section 523 is a federal statute, but the application of that statute depends heavily on state law. Section 523 provides that certain kinds of "debts" are not discharged in bankruptcy. A debt is "liability on a claim," and a claim is a "right to payment."[39] In this case, as in many such cases, Mrs. Riihimaki's "right to payment" stems entirely from state law, not federal law. Therefore, this case is a hybrid of state and federal law; if this case were tried on the merits, the court would have to decide first whether Reverend Kim owes money to Mrs. Riihimaki under state law, and then whether that liability is dischargeable under federal law. In a case like this one, where federal law provides only part of the rule of decision, it is more appropriate to apply state law, rather than federal common law, to determine whether an attorney had authority to enter into a settlement on behalf of a client.

---

[38] *See Kaiaokamalie v. Matson Terminals, Inc.*, 2016 WL 7476336, at *5 (D. Haw. December 29, 2016).

[39] 11 U.S.C. § 101(12), (5).

Ms. Chistensen did not have written authority from Reverend Kim to make the offer or accept the counteroffer. But Hawaii law provides that a settlement can be binding on a client even if the attorney did not have written authority, so long as the client ratifies the settlement.[40] Ratification of a settlement, to overcome the written authority requirement, may be express or implied from the circumstances. "Any failure on the part of the client to object to an unauthorized act within a reasonable time after becoming aware of it will be construed as a ratification of it."[41]

Here, Reverend Kim was aware of and fully understood the offer and the counteroffer, when they were made. She orally authorized her attorney, Ms. Christensen, to make the offer and to accept the counteroffer. She did not raise any objections until the settlement negotiations were complete and a draft of a formal settlement agreement (which was not necessary to the effectiveness of the agreement) was presented to her. Given her knowledge of and acquiescence in the ongoing settlement discussions and of the efforts that the attorneys were expending to negotiate and document the settlement, she waited an unreasonably long time to raise her objections. Therefore, she ratified her attorney's acceptance of the counteroffer and

---

[40] *See Nelson v. Boone*, 78 Haw. 76, 84 (1995); *see also Cook v. Surety Life Ins., Co.,* 79 Haw. 403, 411 (1995); *Haw. Hous. Auth. v. Uyehara*, 77 Haw. 144, 150 (1994) (citing *McKeague v. Freitas*, 40 Haw. 108, 113 (1953)) ("The unauthorized act of an agent, if ratified, is as binding upon the principal as an original express grant of authority.")

[41] *Scott v. Pilipo*, 25 Haw. 386, 390 (1920); *Haw. Hous. Auth. v. Uyehara*, 77 Haw. 144, 151 (1994).

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed 02/09/17   Page 14 of 16

both she and Mrs. Riihimaki are bound by it.

## III. Enforceability of the Draft Settlement Agreement

As is noted above, however, the draft settlement agreement included provisions that deviated from the accepted counteroffer in material respects. Neither Reverend Kim nor her counsel ever accepted the draft settlement agreement. Therefore, although the accepted counteroffer remains binding on both parties, the draft settlement agreement is not.

## IV. Claims Controlled by Trustee

The accepted counteroffer purports to require Reverend Kim to dismiss her counterclaim and release her claims against Mrs. Riihimaki. All of those claims apparently arise out of prepetition dealings between Reverend Kim and Mrs. Riihimaki. Thus, Reverend Kim's claims are all property of her bankruptcy estate under the exclusive control of the bankruptcy trustee.[42] In other words, Reverend Kim cannot deliver all of the consideration she promised to Mrs. Riihimaki in the absence of the bankruptcy trustee's agreement or a court order permitting Reverend Kim to act on behalf of the trustee.

This may very well negate all of the effort the parties expended in the settlement negotiations and in the litigation about the enforceability of the settlement. The settlement remains subject to bankruptcy court approval, however, and I cannot rule

---

[42] 11 U.S.C. §§ 323, 541(a)(1); *see also U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 212 n.9 (1983).

U.S. Bankruptcy Court - Hawaii   #15-90001   Dkt # 245   Filed 02/09/17   Page 15 of 16

out the possibility that, in the meantime, someone will reach an accommodation with the trustee. Therefore, I will hold that the accepted counteroffer is an enforceable contract and leave for another day the question whether the conditions to its effectiveness can be satisfied.

## JUDGMENT

Counsel for Mrs. Riihimaki must submit a proposed form of judgment holding that the accepted counteroffer constitutes a binding and enforceable contract between the parties thereto and denying the motion in all other respects.

## END OF ORDER

16